**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LARRY L. HENDERSON, SR. and JAY TABOR, | ) ) ) | |
| Plaintiffs, | ) ) | No. 4:25-cv-01151-MAL |
| v. | ) ) | |
| CALVI RAYFORD et al., | ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Larry L. Henderson, Sr. has filed a pro se Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.  Doc. 17.  Henderson seeks an order prohibiting Defendants from evicting him or his caretaker Tabor, clarifying that Tabor is a co-tenant, extending Henderson's lease, and providing disability related accommodations.  Doc. 17 at 1.  In his supplement he seeks emergency relief on the grounds that he is facing eviction within the next 24 hours.  Doc. 19 at 1.  As Federal Rule of Civil Procedure 65 recognizes, district courts have equitable power to issue TROs.  *See also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 n.5 (8th Cir. 1981) (en banc).  The Court may grant a TRO when a movant shows that they are (1) "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [their] favor," and (4) that a restraining order "is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Dataphase Sys., Inc.*, 640 F.2d at 113 (same factors).   "While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation omitted).  In determining whether to grant a preliminary injunction, the Court applies the same *Dataphase* factors.  *United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1178–1179 (8th Cir. 1998).

### 1.  Issuing TRO Without Notice

This Court cannot issue a TRO without notice to the opposing party unless, among other things, "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  Here, there is no indication that the opposing parties have been

given notice of the TRO.  They have not been served.  Thus, the movant must certify in writing efforts made to give notice and reasons why it should not be required.  In this case, there is no certification of this sort.  This Court cannot issue a TRO.

### 2.  Dataphase Factors

This Court also cannot issue a TRO because the Defendant's case fails the *Dataphase* factors test.

### a.  Likelihood of success on the merits.

Henderson has not shown a likelihood of success on the merits.  He appears to argue that his eviction should be enjoined because it was initiated to retaliate against him for requesting accommodation for his disability.  Doc. 17 at 3, 4.  This argument was raised—and rejected—in his state-court eviction proceeding,[1] which contains a final judgment.[2]  Judgment, *1014 Spruce QOZB, LLC v. Henderson et al*, No. 2522-AC14976 (Mo. Cir. May 7, 2026).  This Court finds that Henderson is unlikely to succeed in federal court on this claim because of res judicata,[3] collateral estoppel,[4] and because a state court has already ruled against him on the merits of his claims.[5]

Henderson's remaining claims for injunctive relief relate to accommodations that would make the apartment accessible.  Doc. 17 at 5–6.  But these requests are not likely to succeed considering Henderson's imminent eviction, which the state court has already determined is lawful.  Because Henderson is unlikely to win on the merits, this strongly weighs against granting the TRO.

### b.  Irreparable Harm

With respect to irreparable harm, Henderson has not presented facts via affidavit explaining why granting a TRO would cause irreparable harm.  That means that Henderson would have had

---

[1] Judgment, *1014 Spruce QOZB, LLC v. Henderson et al.*, No. 2522-AC14976 at *12 (Mo. Cir. May 7, 2026).

[2] Federal Courts may take judicial notice of Missouri State Court proceedings.  *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007); *Stutzka v. McCarville*, 420 F.3d 757, 760 n. 2 (8th Cir. 2005).

[3] Under Missouri law, the doctrine of res judicata "bars relitigation of a claim adjudicated and 'every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.'"  *Emerald Pointe, LLC v. Taney Cnty. Missouri*, 78 F.4th 428, 433 (8th Cir. 2023) (quoting *LaBlance v. Director of Revenue*, 658 S.W. 3d 505, 508–09 (Mo. 2022)).

[4] "Under the doctrine of collateral estoppel, also called issue preclusion, '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'"  *Turner v. U.S. Dep't of Just.*, 815 F.3d 1108, 1111 (8th Cir. 2016).

[5] Judgment, *1014 Spruce QOZB, LLC v. Henderson et al.*, No. 2522-AC14976 at *13–14 (Mo. Cir. May 7, 2026).

to present facts in his verified complaint explaining why failing to grant a TRO would cause him irreparable harm.  Fed. R. Civ. P. 65(b)(1)(A) (requiring the same).  Even assuming that his complaint alleged irreparable harm, such as inaccessible, unsafe living conditions, loss of housing, and hospitalization, (Doc. 8 at 5), this is but is one factor in determining whether to grant a TRO.  Even if Henderson had properly raised the issue of irreparable harm in a verified complaint he would still not be entitled to relief.

### c.  The balance of the equities.

The third *Dataphase* factor—the balance of the equities—weighs against Henderson.  On one hand there is Henderson's interest in housing and avoiding the disruption in care that is likely to result from an eviction.  These interests are significantly less compelling than they normally would be because Henderson has been on notice of the possibility of eviction for over nine months.  Doc. 1 at 7.  Henderson has had more than adequate time to take measures to mitigate any damage an eviction could cause.  The Court also notes the dignitary harm Henderson would suffer if he is correct that this is an act of discrimination.  On the other hand, Defendants have an interest in their property.  According to the state court final judgment, Henderson has failed to pay over $20,000 in rent.  Judgment, *1014 Spruce QOZB, LLC v. Henderson et al.*, No. 2522-AC14976 at *11 (Mo. Cir. May, 7, 2026) (he failed to pay ten months of rent at a monthly rate of $2,099).  Preventing a landlord from evicting a tenant for failure to pay rent places the landlord "at risk of irreparable harm by depriving them of rent payments with no guarantee of eventual recovery." *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.,* 594 U.S. 758, 766 (2021).  "And preventing them from evicting tenants who breach their leases intrudes on one of the most fundamental elements of property ownership—the right to exclude." *Id*; *see also Cedar Point Nursery v. Hassid,* 594 U.S. 139, 149–150 (2021) (collecting cases on the importance of the right to exclude).  Property rights are basic civil rights.  *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552 (1972).  Considering the state court judgment against Henderson, depriving Defendants of the right to exclude Henderson would be a denial of their rights.  The balance of the equities weighs in favor of Defendants.

### d.  Public interest.

Fourth, granting the motion would not be in the public interest.  Allowing tenants to stay a court-ordered eviction on flimsy grounds incentivizes using litigation as a delay tactic, making it even more difficult for landlords to exercise their right to evict tenants in breach of their leases.

Not only would this undermine landlords' fundamental property rights, it also causes wider societal harm.  For instance, it could make landlords even more hesitant to rent to individuals posing a risk of default, which could make finding housing even more challenging for low-income individuals.  Using unmeritorious litigation as a delay tactic also impairs judicial efficiency by bogging judges down in frivolous cases, preventing them from spending time on other, meritorious cases.  Granting Henderson's Motion would be contrary to the public interest.

For the reasons stated above, the *Dataphase* factors support denying Henderson's Motion for TRO and for preliminary injunction.

*          *          *

Thus, the Court denies Henderson's Motion for TRO for two reasons: (1) Henderson failed to file the required certifications explaining how he attempted to notify Defendants and why this Court should issue a TRO *ex parte*, and (2) because the *Dataphase* factors do not support issuing a TRO.  The *pro se* Emergency Motion for Temporary Restraining Order and Preliminary Injunction,  Doc. 17, is DENIED.

Dated this 8th day of May, 2026.

_____
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

4